[Cite as *R & A Lawn Care, L.L.C. v. Back*, 2017-Ohio-4404.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| R&A LAWN CARE, LLC, | : | APPEAL NO. C-160682 |
| Plaintiff-Appellant, | : | TRIAL NO. 16CV-02452 |
| vs. | : | *O P I N I O N.* |
| TIM BACK, | : | |
| and | : | |
| BACK TREE AND LANDSCAPE, INC., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 21, 2017

*Pamela S. Petas*, for Plaintiff-Appellant,

*The Farrish Law Firm* and *Kathleen C. King*, for Defendants-Appellees.

**MYERS, Judge.**

{¶1}    Plaintiff-appellant R&A Lawn Care, LLC, ("R&A") has appealed from the trial court's decision finding that an oral contract did not exist between R&A and defendants-appellees Tim Back and Back Tree and Landscape, Inc., and awarding R&A $1,800 for work that it had performed for the defendants.

{¶2}    In three assignments of error, R&A argues that the trial court erred in failing to find that the parties had an oral contract for lawn care services, in finding that R&A had failed to prove the sum owed for the lawn care services that it had provided, and in finding that the value of R&A's unpaid work was only $1,800.

{¶3}    Because we find that the parties had entered into an oral contract for lawn care services, we reverse the trial court's judgment.

### *Facts and Procedure*

{¶4}    R&A filed a complaint against the defendants asserting claims for breach of an oral contract, payment on account, quantum meruit, and unjust enrichment, and seeking monetary damages of $6,333.55 plus interest for lawn care services that R&A, a lawn care company, had provided for the defendants.

{¶5}    During a trial to the bench on R&A's claims, the following testimony was presented.  Ross Gottula, the owner of R&A, testified that he and Back had orally agreed that R&A would perform landscape work on property that Back owned in Indiana at a rate of $25 an hour.  According to Gottula, Back had told him to keep track of the hours that his employees worked and to inform Back of those hours, and that Back would then pay him.  Gottula testified that after R&A's employees performed work for Back, he would verbally inform Back of the number of hours of

work that his employees had performed. If Back then requested an invoice, Gottula provided one. Back was typically slow at paying R&A for the work performed. Gottula explained that, in a given year, Back would pay R&A in the fall or following spring for work that had been performed the previous summer.

{¶6} Gottula had requested payment from Back for 138 hours and ten minutes of work performed in 2013 and for 204 hours of work performed in 2014. Gottula introduced exhibits summarizing and documenting the time that his employees had spent working on Back's property in 2013 and 2014.

{¶7} In July and September of 2014, Back Tree and Landscape issued Gottula a check for $1,000. Back also gave Gottula $400 cash in September of 2014. Gottula credited these payments towards the amount that R&A had billed for work performed in 2013. The defendants made no further payments toward the remaining hours that R&A had billed for 2013 or the hours billed for 2014.

{¶8} In November of 2015, a debt collector, on behalf of R&A, sent Back a letter requesting payment of $6,333.55. Gottula explained that this amount equaled the total amount owed for the hours billed in 2013 and 2014, less the $2,400 in payments that he had already received. The defendants sent a responsive letter stating, "I reviewed your letter and refuse to pay for services not rendered. No contract (agreement) of this nature has ever been submitted or signed. All invoices submitted were paid in full."

{¶9} With respect to the services performed and the amount of hours billed, Gottula testified he had never offered to reduce his employees' hourly rate, and that Back had never complained about the work performed or questioned the hours that R&A had billed. Gottula additionally presented testimony from four of his

3

employees who had performed work on Back's property. These employees discussed the work performed and identified time sheets documenting their hours.

{¶10} Back testified that he and Gottula had entered into an agreement in 2011 for R&A to perform work on Back's Indiana property at an hourly rate of $25. The parties operated continuously under this oral agreement. In 2013, Back began to have concerns about the increased number of hours that R&A was billing. He felt that the increase was due to R&A's use of what Back described in various derogatory and uncomplimentary terms, most diplomatically as "non-professional helpers."

{¶11} Back felt that R&A's use of this type of worker dramatically increased in 2014, although Gottula had employed a few such workers in 2013. He testified that he expressed his concerns to Gottula, who told him that he would not charge full rate for these workers. Gottula denied this.

{¶12} According to Back, he paid R&A for services rendered in 2013 and 2014. When asked if he believed that he owed R&A any remaining money, he stated that, at the conclusion of R&A's work in 2014, he had offered Gottula $1,800 to settle matters between them, and that Gottula had refused. Back testified that he felt this amount compensated R&A for the productive work that it had performed, and that he had only agreed to pay $25 an hour for professional work. Back believed that the $2,400 in payments that he made to R&A in 2014 were for work performed in 2014 because they were made within a month or two of the services being rendered. He testified that, prior to this case, he had never seen the time sheets that Gottula had introduced at trial and that he had not received invoices for the work that he was being billed for.

{¶13} The trial court issued a decision stating that it could not find by a preponderance of the evidence that an oral contract existed between the parties or that R&A had proven a sum that was itemized via any documents. Having found that there was no oral agreement, the trial court never addressed whether an existing oral agreement had been modified, and if so, what the terms of the modification were. The trial court further determined that R&A was owed $1,800 for its unpaid work.

### Existence of Oral Contract

{¶14} In its first assignment of error, R&A argues that the trial court erred when it failed to find that the parties had an oral contract for lawn care services.

{¶15} Where the trial court's judgment is based upon a question of law, this court will review its determination on the issue of law de novo. *United States Fire Ins. v. Am. Bonding Co., Inc.*, 1st Dist. Hamilton Nos. C-160307 and C-160317, 2016-Ohio-7968, ¶ 17. The existence of a contract is a question of law. *Oryann, Ltd. v. SL & MB, LLC*, 11th Dist. Lake No. 2014-L-119, 2015-Ohio-5461, ¶ 24; *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, 846 N.E.2d 68, ¶ 12 (9th Dist.).

{¶16} The essential elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16; *Kodu v. Medarametla*, 1st Dist. Hamilton No. C-160319, 2016-Ohio-8020, ¶ 9. The terms of an oral contract are often not as easily discernable as the terms of a written contract. *Kodu* at ¶ 9. Thus, the terms of an oral contract may be determined based on the parties' words, deeds, acts, and silence. *Id.*; *Kostelnik* at ¶ 15.

{¶17} In this case, the uncontroverted evidence established that the parties had entered into an oral contract. Gottula testified that he and Back had reached an agreement for R&A to perform landscape services on Back's property at an hourly rate of $25. Back likewise testified that such an agreement had been reached. Back also admitted in his answer that an oral contract for $25 per hour existed between the parties. There was no evidence to the contrary. In fact, Back never disputed that a contract existed, he only disputed the amount owed under the contract.

{¶18} Moreover, the parties' course of conduct over a two-year period demonstrated the terms of this agreement, as the defendants paid R&A an hourly rate of $25 for the landscaping services that it performed in 2011 and 2012. We find that, as a matter of law, the parties had entered into an oral contract. The trial court erred in determining otherwise.

{¶19} R&A's first assignment of error is sustained. Our resolution of this assignment of error renders moot R&A's second and third assignments of error. We reverse the trial court's judgment and remand the cause for the court to determine, in light of our holding that the parties had entered into an oral contract, whether that contract was modified, whether it was breached, and, if it was breached, to determine the amount of damages.

Judgment reversed and cause remanded.

ZAYAS, P.J., and MILLER, J., concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.